UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROXANN M. MILLARD,<br><br>          Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,[1]<br><br>          Defendant. | CIVIL ACTION NO. 3:19-CV-00850<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM OPINION**

Plaintiff Roxann Millard brings this action under sections 205 and 1631 of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. For the following reasons, the Commissioner's decision is **REVERSED** and this matter **REMANDED**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

In August 2016, Millard protectively filed applications for Title II disability insurance benefits and Title XVI supplemental security income, claiming disability beginning August 22, 2016, due to high blood pressure and back problems. (Doc. 8-5, at 2; Doc. 8-6, at 15). The Social Security Administration initially denied both applications in January 2017, prompting

---

[1] The Court has amended the caption to replace, as the named defendant, Acting Social Security Commissioner Nancy A. Berryhill with her successor, Social Security Commissioner Andrew Saul. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

Millard's request for a hearing, which Administrative Law Judge (ALJ) Daniel Balutis held on May 16, 2018. (Doc. 8-4, at 2-11; Doc. 8-2, at 31). In a written opinion dated May 29, 2018, the ALJ determined that Millard is not disabled and therefore not entitled to benefits under Titles II or XVI. (Doc. 8-2, at 25). On March 21, 2019, the Appeals Council denied Millard's request for review. (Doc. 8-2, at 2).

On May 16, 2019, Millard filed the instant complaint. (Doc. 1). The Commissioner responded on August 14, 2019, providing the requisite transcripts from Millard's disability proceedings. (Doc. 7; Doc. 8). The parties then filed their respective briefs, with Millard raising three bases for reversal or remand. (Doc. 11, at 4; Doc. 12).

## II. STANDARDS OF REVIEW

To receive benefits under Titles II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905.[2] Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(d).

C.F.R. § 404.131.

A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1).

B. JUDICIAL REVIEW

The Court's review of a determination denying an application for benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064

(3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Millard is disabled, but whether the Commissioner's determination that Millard is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

## III. THE ALJ'S DECISION[3]

In his written decision, the ALJ determined that "[Millard] has not been under a disability, as defined in the Social Security Act, from August 22, 2016, through the date of this decision . . .." (Doc. 8-2, at 25). Further, the ALJ determined that Millard is capable of performing medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c). (Doc. 8-2, at 20). This limitation "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is engaging in SGA, the claimant is not disabled, regardless of age, education, or work experience. SGA is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. §§ 404.1520(b), 416.920(b). In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574; 20 C.F.R. § 416.974.

Here, the ALJ determined that Millard "has not engaged in substantial gainful activity since August 22, 2016, the alleged onset date." (Doc. 8-2, at 18). Thus, the ALJ's analysis proceeded to step two.

---

[3] At the outset, the ALJ determined that Millard met the insured status requirements of the Social Security Act through June 30, 2022. (Doc. 8-2, at 18).

B.  STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the 12-month duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ determines that the claimant does not have an impairment or combination of impairments that significantly limits his or her "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the ALJ analysis continues to the third step.

Here, the ALJ concluded that Millard has two severe impairments: essential hypertension and lumbar degenerative disc disease. (Doc. 8-2, at 19).[4]

C.  STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ determined that none of Millard's impairments, considered individually or

---

[4] Additionally, the ALJ found that Millard has six non-severe impairments: iron deficiency anemia, acne, vulvar lesion, left eye pain, anxiety, and depression. (Doc. 8-2, at 19).

in combination, meets or equals the severity of a listed impairment. (Doc. 8-2, at 20). The ALJ considered the musculoskeletal listings under section 1.00 of appendix 1 – specifically, listing 1.04 (disorders of the spine) – and the cardiovascular listings under section 4.00. 20 C.F.R. Part 404, Subpt. P, App. 1 §§ 1.00, 4.00; (Doc. 8-2, at 20). The ALJ found that Millard's impairments, though severe, do "not satisfy the requisite laboratory, clinical and/or diagnostic requirements for listing level severity." (Doc. 8-2, at 20).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the evidence presented. At this intermediate step, the ALJ considers "all [the claimant's] symptoms . . . and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). This involves a two-step inquiry where the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).

Here, based on his consideration of the medical opinions and other relevant evidence in the record, the ALJ determined that Millard has the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that she (1) "could frequently climb ramps and stairs, climb ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, and crawl," and (2) "could have frequent exposure to dust, odors, and fumes, extreme cold, and vibrations." (Doc. 8-2, at 20).

### E. STEP FOUR

Having assessed a claimant's RFC, step four requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is defined as work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b), 416.960(b). "If the claimant can perform [her] past relevant work despite [her] limitations, [s]he is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)).

Here, however, the ALJ found that Millard had no past relevant work, therefore this step does not necessitate a determination that the claimant is not disabled. (Doc. 8-2, at 23).

### F. STEP FIVE

Finally, at step five of the sequential analysis process, the ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In his step-five analysis, the ALJ determined that Millard was 50 years old on the alleged onset date, defined as an individual closely approaching advanced age as set forth by 20 C.F.R. §§ 404.1563, 416.963, and has "at least a high school education and is able to communicate in English" as considered in 20 C.F.R. §§ 404.1564, 416.964. (Doc. 8-2, at 23).

The ALJ determined that upon consideration of these factors, Millard's RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that [Millard] can perform." (Doc. 8-2, at 24). The ALJ specifically identified occupations of cleaner, bagger, and kitchen worker, all unskilled jobs with at least 195,000 openings nationally. (Doc. 8-2, at 24).

Concluding his analysis, the ALJ determined that Millard is not disabled and denied her applications for benefits. (Doc. 5-2, at 25).

## IV. DISCUSSION

Millard advances three arguments on appeal: (1) the ALJ erred in not incorporating the consultative examiner's stated limitations into Millard's RFC despite finding the examiner's opinions generally consistent with the evidence of record; (2) the ALJ erred in neglecting to evaluate Millard's testimony concerning how her high blood pressure affects her ability to work; and (3) the ALJ erred in not considering Millard's migraine headaches a severe impairment. (Doc. 11, at 4).

Millard's first point of contention is that Dr. Grabon, the consultative examiner, indicated that Millard was only capable of standing or walking five hours out of an eight-hour workday and was capable of lifting a maximum of 20 pounds, yet the ALJ determined Millard was capable of performing work at the medium exertional level which entails lifting 50 pounds and standing or walking for approximately six hours in an eight-hour workday. (Doc. 11, at 5-7); *see* SSR 83-10. Millard takes issue with the ALJ imposing this heightened exertional level despite finding that Dr. Grabon's opinions were "generally consistent" with the evidence of record. (Doc. 11, at 5). The Commissioner submits that the ALJ was not required to incorporate all limitations indicated by Dr. Grabon because he afforded Dr. Grabon's opinion

only partial weight. (Doc. 12, at 13). Additionally, the Commissioner submits that the ALJ's RFC determination need not mirror a medical opinion. (Doc. 12, at 13).

When crafting an RFC, the ALJ must consider all of the evidence in the record, including the testimony of the claimant. *See Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). Mere speculation as to a claimant's RFC is not permitted. *Gormont v. Astrue*, 2013 WL 791455, at *8 (M.D. Pa. 2013). Rather, the RFC determination must be supported by medical evidence, and, generally, the claimant's functional capabilities articulated in a medical opinion. *Gormont*, 2013 WL 791455, at *8. The RFC determination can be described as a "mechanical determination" by the ALJ, a translation of medical determinations – "i.e., that the claimant can lift five, 20, 50, or 100 pounds, and can stand for 30 minutes, two hours, six hours or eight hours" – made by a doctor. *Gormont*, 2013 WL 791455, at *8 (quoting Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law and Procedure in Federal Courts*, 287–88 (2011)). The ALJ, using the regulations, translates the medical determinations of a claimant's capabilities into an all-encompassing residual functional capacity determination. *Gormont*, 2013 WL 791455, at *8 (internal quotation omitted).

Medical opinion, as well as Millard's testimony, provides evidence that Millard is unable to lift more than 21 pounds or stand for more than five hours. (Doc. 8-2, at 43) (testimony that customers usually help her pick up a 20-pound box of cat litter at work due to her pain); (Doc. 8-8, at 7-8) (medical opinion that Millard can never lift or carry more than 21 pounds, can occasionally lift or carry 11 to 20 pounds, and can frequently lift or carry up to ten pounds, and can stand for five hours in an eight-hour work day). The ALJ noted that two medical doctors opined that Millard was capable of light duty work, which limits the

claimant to lifting 20 pounds. (Doc. 8-2, at 23). As Millard has identified evidence indicating that she is not physically capable of lifting 50 pounds at a time, with frequent lifting or carrying of 25 pounds, as well as that she is not physically capable of standing and carrying weight for six hours of an eight-hour day, the ALJ must identify evidence in support of his determination that Millard is capable of this level of physical exertion for his decision to withstand scrutiny. *See Gormont*, 2013 WL 791455, at *8.

Turning to the ALJ's decision, nowhere does he provide evidentiary support for his limits of lifting 50 pounds and standing for six hours out of an eight-hour work day. (Doc. 8-2, at 20-23). The Commissioner cites to the ALJ's note of findings that Millard was "in no acute distress, had normal gait, could walk on her heels and toes without difficulty, fully squat, used no assistive device, had 5/5 strength, no muscle atrophy, and a negative straight leg raising test." (Doc. 12, at 9). None of these findings, however, support the premise that Millard would be able to lift 50 pounds or stand for six hours despite her back pain.

The Commissioner also cites to the ALJ's identification of an August 2017 complaint of back pain which resulted in an unremarkable exam. (Doc. 12, at 9). There is nothing in the notes from this exam addressing Millard's ability to lift or her ability to stand at length.[5] (Doc. 8-8, at 33-35). The Commissioner also cites the ALJ's observation that Millard did not appear to attend physical therapy, did not follow up with the doctor, and was treated only with ibuprofen, i.e. "conservative care." (Doc. 12, at 9-10). It first bears noting that Millard was prescribed Cyclobenzaprine for muscle spasms. (Doc. 12, at 14). Additionally, nothing in the

---

[5] However, as noted by the ALJ, a diagnosis of lumbar degenerative disc disease was assessed resulting in a referral to physical therapy and a medication prescription for muscle spasms. (Doc. 8-8, at 33-35).

record indicates Millard was confronted with being forced to lift 50 pounds and stand for six hours out of an eight-hour day. She occasionally was forced to lift 20-pound boxes of cat litter at work, and this necessitated assistance from the customer. (Doc. 8-2, at 43). Therefore, her lack of follow-up with her doctor does not bear relevance on these maximum limitations articulated by the ALJ.[6] Further, before drawing any negative inference from Millard's lack of follow up with her doctor, the ALJ was required to question Millard on the subject. *See* SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints."). This Court considers an ALJ's analysis "fatally flawed" when the ALJ interprets a lack of regular treatment as a sign that the claimant's subjective complaints lack credibility without soliciting testimony on the issue at the hearing. *Goss v. Astrue*, 2014 WL 888497, at *10 (M.D. Pa. 2014). The ALJ made no reference to Millard's lack of follow-up treatment at the hearing, therefore he was precluded from inferring greater capabilities based on this evidence. *See Goss*, 2014 WL 888497, at *10.

Because the Court concludes that substantial evidence does not support the ALJ's decision, the claimant is entitled to reversal and remand for further proceedings. The undersigned will forego consideration of the claimant's remaining allegations at this juncture.

---

[6] The ALJ's reliance on Millard not attending physical therapy is possibly in error, as Dr. Grabon noted that she did attend physical therapy. (Doc. 8-8, at 2); *see* (Doc. 8-2, at 22) (ALJ finding "there is no evidence that the claimant followed through with the referral for physical therapy").

## V. CONCLUSION

Based on the foregoing, the Commissioner's decision to deny Millard benefits is ordered **REVERSED** and **REMANDED** with instructions to re-evaluate the matter and fully develop the record if need be. The Commissioner may collect further evidence and hold hearings as he finds appropriate. An appropriate Order follows.

**Dated: April 13, 2020**                                *s/ Karoline Mehalchick*
                                                                                          **KAROLINE MEHALCHICK**
                                                                                          **United States Magistrate Judge**